UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IBRAHIM ALY,

     Plaintiff,

     v.

UNION STATION REDEVELOPMENT
CORPORATION,

     Defendant.

Civil Action No. 25-cv-3824-RC

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................ 3

    A.    Plaintiff's Allegations of Unrelated Federal Land and Statutory Authority........... 3

    B.    Plaintiff's Alleged Ownership of the Reading Company, and Reading's Bankruptcy Reorganization. ................................................................. 5

    C.    Reading's Alleged Ownership of Union Station Through Penn Central and Other Entities. ...................................................................................... 6

    D.    Current Ownership of Union Station. ................................................... 8

LEGAL STANDARD........................................................................................... 9

    A.    Rule 12(b)(1) Standard. .................................................................... 9

    B.    Rule 12(b)(6) Standard. .................................................................. 10

ARGUMENT .................................................................................................. 11

I.    Plaintiff Lacks Standing to Assert His Claims. ............................................ 11

    A.    Plaintiff Has Not Plausibly Alleged Injury in Fact................................. 12

    B.    The Complaint Does Not Plausibly Allege that the Alleged Injury Is Traceable to USRC's Conduct................................................................ 17

II.    The Complaint Fails to State a Claim for Which Relief Can Be Granted. ...................... 17

    A.    Plaintiff's Suit Is Barred by the Applicable Statute of Limitations. ..................... 18

    B.    The Complaint Violates Federal Rules of Civil Procedure 8 and 10.................... 19

    C.    The Complaint Fails to Allege Facts Essential to Plaintiff's Asserted Claims for Relief........................................................................... 21

    D.    Plaintiff Sues the Wrong Defendant. ................................................. 25

CONCLUSION................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acon-Chen v. Buttigieg,*
   2024 WL 4416943 (D.D.C. Oct. 5, 2024) ............................................................................20

*Aly v. D.C.,*
   2021 U.S. Dist. LEXIS 6049 (D.D.C. Jan. 12, 2021) ......................................................2, 21

*Aly v. Lindner,*
   2018 WL 7080044 (M.D. Pa. Nov. 27, 2018) ....................................................................2

*Aly v. Queen of Eng.,*
   2016 U.S. Dist. LEXIS 21259 (M.D. Pa. Feb. 19, 2016) .................................................2, 21

*Am. Airways Charters, Inc. v. Regan,*
   746 F.2d 865 (D.C. Cir. 1984) ............................................................................................16

*Am. Immigr. Laws. Ass'n v. Reno,*
   199 F.3d 1352 (D.C. Cir. 2000) ..........................................................................................16

*Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.,*
   2023 WL 1438376 (D.D.C. Feb. 1, 2023) ..........................................................................13

*Chancellor v. Musk, et al.,*
   2025 WL 2959675 (D.D.C. Oct. 20, 2025) ........................................................................20

*Arpaio v. Obama,*
   797 F.3d 11 (D.C. Cir. 2015) .......................................................................................10, 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .....................................................................................................10, 11

*Au-Aulaqi v. Obama,*
   727 F. Supp. 2d 1 (D.D.C. 2010) .......................................................................................13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................................10

*Blanchette v. Conn. Gen. Ins. Corps.,*
   419 U.S. 102 (1974) ....................................................................................................5, 7, 23

*\*Breathe DC v. Swedish Match N. Am. LLC,*
   2025 WL 2759042 (D.D.C. Sep. 29, 2025) ........................................................................12

*Bronner v. Duggan*,
  364 F. Supp. 3d 9 (D.D.C. 2019), *aff'd sub nom. Bronner on Behalf of Am.*
  *Stud. Ass'n v. Duggan*, 962 F.3d 596 (D.C. Cir. 2020)......................................................13, 16

*Brown v. Pa. Higher Educ. Assistance Agency*,
  2021 WL 2525024 (D.C. Cir. May 17, 2021).........................................................................11

*Carty v. Author Solutions, Inc.*,
  789 F. Supp. 2d 131 (D.D.C. 2011) .......................................................................................26

*Cedar Point Nursery v. Hassid*,
  594 U.S. 139 (2021).................................................................................................................22

*Cheeks v. Fort Myer Constr. Co.*,
  722 F. Supp. 2d 93 (D.D.C. 2010) ..................................................................................16, 17

*Cheeks v. Fort Myer Constr. Corp.*,
  71 F. Supp. 3d 163 (D.D.C. 2014) .........................................................................................19

*Consol. Rail Corp. v. Interstate Com. Comm'n*,
  590 F.2d 937 (D.C. Cir. 1978) ..........................................................................................5, 14

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
  407 F.3d 1220 (D.C. Cir. 2005) ...............................................................................................6

*Crisafi v. Holland*,
  655 F.2d 1305 (D.C. Cir. 1981) .............................................................................................11

*Daniels v. D.C.*,
  894 F. Supp. 2d 61 (D.D.C. 2012) .........................................................................................11

*Denton v. Hernandez*,
  504 U.S. 25 (1992)..................................................................................................................11

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024)................................................................................................................17

*Fed. Power Comm'n v. Hope Nat. Gas Co.*,
  320 U.S. 591 (1944)..................................................................................................................8

*Fla. Audubon Soc'y v. Bentsen*,
  94 F.3d 658 (D.C. Cir. 1996) (en banc) ...................................................................................9

*Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*,
  493 U.S. 331 (1990)................................................................................................................16

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*,
  528 U.S. 167 (2000)................................................................................................................12

*Gallo v. D.C.*,
 2025 WL 1446283 (D.C. Cir. May 20, 2025)........................................................................11

*Geier v. Am. Honda Motor Co.*,
 529 U.S. 861 (2000).............................................................................................................25

*Gelb v. U.S. Dep't of Def.*,
 2025 WL 49882 (D.D.C. Jan. 8, 2025)................................................................................13

*Grayson v. AT&T Corp.*,
 15 A.3d 219 (D.C. 2011) .......................................................................................................9

*Hagans v. Lavine*,
 415 U.S. 528 (1974).............................................................................................................11

*Haines v. Kerner*,
 404 U.S. 519 (1972).............................................................................................................10

*Haynes v. Navy Fed. Credit Union*,
 825 F. Supp. 2d 285 (D.D.C. 2011).....................................................................................22

*Hicks v. Maryland*,
 2025 WL 2206941 (D.D.C. Aug. 1, 2025) ..........................................................................11

*James Madison Ltd. v. Ludwig*,
 82 F.3d 1085 (D.C. Cir. 1996).............................................................................................26

*Jefferson-11th St., LLC v. D.C.*,
 2020 WL 3035038 (D.D.C. June 5, 2020)...........................................................................18

*Jerome Stevens Pharm., Inc. v. FDA*,
 402 F.3d 1249 (D.C. Cir. 2005)...........................................................................................10

*Jiggetts v. D.C.*,
 319 F.R.D. 408 (D.D.C. 2017) (KBJ), *aff'd sub nom. Cooper v. D.C.*, No. 17-
 7021, 2017 WL 5664737 (D.C. Cir. Nov. 1, 2017) .............................................................19

*Khoza v. D.C.*,
 2025 WL 2970352 (D.D.C. Oct. 21, 2025) ..........................................................................20

*\*Knick v. Township of Scott, Pennsylvania*,
 588 U.S. 180, 202 (2019).................................................................................18, 21, 23, 26

*Kowal v. MCI Commc'ns Corp.*,
 16 F.3d 1271 (D.C. Cir. 1994).............................................................................................10

*Labovitz v. Wash. Times Corp.*,
 172 F.3d 897 (D.C. Cir. 1999).............................................................................................17

iv

*Lee v. Natl. Elec. Contractor Ass'n,*
   322 F. Supp. 3d 43 (D.D.C. 2018) ..................................................................20

*Lennon v. McClory,*
   3 F.Supp.2d 1461 (D.D.C.1998) ....................................................................16

*Lepelletier v. FDIC,*
   164 F.3d 37 (D.C. Cir. 1999) .........................................................................12

*Lugar v. Edmondson Oil Co.,*
   457 U.S. 922 (1982) ........................................................................................21

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ......................................................................................9, 12

*Martin v. Santorini Cap., LLC,*
   236 A.3d 386 (D.C. 2020) ..............................................................................24

*\*Mills v. Am. Univ.,*
   2022 WL 17719576 (D.D.C. Dec. 15, 2022) ..............................................19, 20

*Nat'l R.R. Passenger Corp. (Amtrak) v. Sublease Int. Obtained Pursuant to
   Assignment & Assumption of Leasehold Int. Made as of Jan. 25, 2007,*
   2025 WL 708514 (D.D.C. Mar. 5, 2025) .......................................................24

*\*Nat'l R.R. Passenger Corp. v. Sublease Int. Obtained Pursuant to an Assignment
   & Assumption of Leasehold Int. Made as of Jan. 25, 2007,*
   2024 WL 2161814 (D.D.C. Apr. 17, 2024) ..............................7–8,17,19, 23, 25

*Nwosu v. Hewlett Packard Enter. Co.,*
   2025 WL 1744582 (D.D.C. Feb. 7, 2025) .......................................................25

*Owens v. BNP Paribas, S.A.,*
   897 F.3d 266 (D.C. Cir. 2018) ........................................................................11

*Owens-Illinois Glass Co. v. Am. Coastal Lines, Inc.,*
   222 F. Supp. 923 (S.D.N.Y. 1963) ...................................................................8

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.,*
   43 F. Supp. 3d 28 (D.D.C. 2014) .....................................................................6

*Powers v. Ohio,*
   499 U.S. 400 (1991).........................................................................................13

*Matter of Reading Co.,*
   24 B.R. 858 (E.D. Pa. 1980) ...........................................................................14

*Robinson v. Pilgram*,
   2021 WL 5987016 (D.D.C. Dec. 17, 2021), *aff'd*, 2022 WL 3009621 (D.C.
   Cir. July 28, 2022) ............................................................................................................10

*Schnitzler v. United States*,
   761 F.3d 33 (D.C. Cir. 2014) ............................................................................................10

*Schweitzer v. Consol. Rail Corp.*,
   65 B.R. 794 (E.D. Pa. 1986) ...................................................................................5, 14, 18

*Scioli Turco, Inc. v. Phila. & Reading R.R. Co.*,
   2023 WL 7646535 (E.D. Pa. Nov. 14, 2023) ...........................................................6, 14, 16

*SEC v. RPM Int'l, Inc.*,
   282 F. Supp. 3d 1 (D.D.C. 2017) .......................................................................................14

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) .............................................................................................................10

*T.M. v. D.C.*,
   961 F. Supp. 2d 169 (D.D.C. 2013) ...................................................................................20

*U.S. Bank Nat'l Ass'n v. Poblete*,
   2016 WL 1089217 (D.D.C. Mar. 18, 2016) ...................................................................23, 24

*U.S. Ecology, Inc. v. Dep't of Interior*,
   231 F.3d 20 (D.C. Cir. 2000) ............................................................................................10

*United States v. All Assets Held at Bank Julius Baer & Co.*,
   772 F. Supp. 2d 191 (D.D.C. 2011) ...................................................................................10

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...........................................................................................................12

## Statutes

15 U.S.C. § 78m(d) .....................................................................................................................15

28 U.S.C. § 1491 .........................................................................................................................26

28 U.S.C. § 2501 .........................................................................................................................18

*40 U.S.C. § 6902 ....................................................................................................................8, 24

40 U.S.C. § 6903 .........................................................................................................................24

42 U.S.C. § 1983 ...........................................................................................................1, 2, 9, 18

D.C. Code § 12–301 ....................................................................................................................18

D.C. Code § 16-1101 .................................................................................................23

D.C. Code § 16-1104 .................................................................................................23

**Rules**

Fed. R. Civ. P. 8 ......................................................................................................19

Fed. R. Civ. P. 10 ....................................................................................................20

*Fed. R. Civ. P. 12(b)(1) ..............................................................................1–2, 10, 12, 26

*Fed. R. Civ. P. 12(b)(6) ..................................................................................1–3, 10, 26

**Other Authorities**

American Premier Underwriters Inc., *Annual Report* ...............................................7

American Premier Underwriters Inc., *Current Report* ..............................................7

*Convey*, Black's Law Dictionary (12th ed. 2024).....................................................22

Moody's Transp. Manual, *Washington Terminal Co.* 112 (1976)...............................8

Moody's Transp. Manual, *Washington Terminal Co.* 745 (1977)...............................8

Moody's Transp. Manual, *Washington Terminal Co.* 931 (1982)...............................8

Reading International, *Annual statement of changes in beneficial ownership of securities* .........................................................................................................5, 15

Reading International, *Corporate Overview*.............................................................5

Reading International, *Current Report* ...................................................................5

Reading International, *Proxy Statement* .................................................................5

Reading International, *Statement of Changes in Beneficial Ownership* .......................15

Surface Transportation Board Docket No. FD_34953_0 ............................................7

## PRELIMINARY STATEMENT

Union Station Redevelopment Corporation ("USRC") respectfully requests that the Court dismiss Plaintiff Ibrahim Aly's Complaint, *see* ECF No. 1-1 (hereinafter, "Compl."), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Although difficult to parse, Plaintiff's *pro se* Complaint alleges that the federal government effected an illegal taking of Union Station in Washington, D.C.  According to Plaintiff, the Reading Company ("Reading") indirectly owns Union Station, and the Complaint conclusorily asserts that Plaintiff, in turn, owns Reading.  Based on this chain of allegations, Plaintiff filed suit against USRC—a non-profit that leases Union Station from the federal government with the directive to oversee the preservation and restoration of Union Station's historical and architectural significance, maintain the station's long-term function as a multimodal transportation center, and enhance the retail and amenities within the station.  Plaintiff contends that USRC's oversight of Union Station as a government lessee violates the Fifth Amendment's Takings Clause and infringes Plaintiff's alleged property rights in violation of 42 U.S.C. § 1983.

The Complaint suffers from several fatal defects.  Each of these deficiencies independently requires dismissal of the Complaint.

*First*, the Complaint does not plausibly allege Plaintiff's standing to bring his claims.  At the outset, Plaintiff fails to identify any injury to himself.  The Complaint alleges harm only to the alleged property rights of Reading—a corporation which Plaintiff asserts he owns only in conclusory fashion.  That allegation is contradicted both by other allegations in the Complaint as well as Reading's judicially noticeable public filings with the U.S. Securities and Exchange Commission ("SEC").  Because Plaintiff alleges no independent harm to himself, he cannot establish standing.  Nor does the Complaint establish that Plaintiff has standing to assert the alleged rights of third-party Reading because Plaintiff does not plausibly allege the requisite close

relationship with Reading nor any obstacle preventing Reading from pursuing its own alleged interests. Even assuming that Plaintiff could establish an actionable injury in fact, the Complaint fails adequately to allege that any injury to Plaintiff is traceable to USRC's conduct. This Court should dismiss the Complaint pursuant to Rule 12(b)(1).

*Second*, even if Plaintiff could establish standing to sue USRC (which he cannot), Plaintiff's claims nevertheless fail because they are long-since barred by the applicable statutes of limitations. Plaintiff's allegations and judicially noticeable facts make clear that Plaintiff's claims regarding the alleged illegal taking of Union Station accrued no later than when the federal government took control of the property in the 1980s. Plaintiff's lawsuit filed in 2025 is thus well beyond the fifteen-year District of Columbia limitations period for the Complaint's request for ejectment. And the limitations periods for a Fifth Amendment takings claim or a Section 1983 claim are even shorter. Regardless of which limitations period applies, the permissible period for filing suit has long passed and the Complaint should therefore be dismissed pursuant to Rule 12(b)(6).

*Third*, this Court should dismiss the Complaint because it violates Federal Rule of Civil Procedure 8's clear statement requirement, and Federal Rule of Civil Procedure 10's requirement that a complaint include numbered paragraphs. The Complaint's unnumbered, rambling, excessive, and irrelevant allegations undermine the purpose of the Federal Rules to ensure that a defendant is properly placed on notice of the allegations and claims against it.[1]

---

[1] Other district courts have previously dismissed Plaintiff's complaints for failure to comply with Rule 8, among other reasons. *See Aly v. D.C.*, 2021 U.S. Dist. LEXIS 6049, at *2 (D.D.C. Jan. 12, 2021) (dismissing for failure to comply with Rule 8); *Aly v. Lindner*, 2018 WL 7080044, at *1 (M.D. Pa. Nov. 27, 2018) (dismissing with prejudice Plaintiff's suit against "Carl H. Lindner III, American Premier Underwriters, Inc., Penn Central Corporation, Penn Central Properties, Inc., and Annuity Investors Life Insurance Company"); *Aly v. Queen of Eng.*, 2016 U.S. Dist. LEXIS 21259, at *1 (M.D. Pa. Feb. 19, 2016) (describing Plaintiff's complaint as "cryptic and

*Fourth*, Plaintiff has failed to state a claim for relief because the Complaint does not plausibly allege sufficient facts to demonstrate that USRC effected a taking of any property belonging to Plaintiff. Most fundamentally, the Complaint fails plausibly to allege that Plaintiff (or Reading) owns any of the property that he alleges was unlawfully taken or occupied by USRC. Nor is USRC a government entity—a prerequisite for a takings claim. Indeed, as the Complaint recognizes, USRC merely leases and oversees Union Station, which is owned by the U.S. Department of Transportation; thus, any taking that ever occurred, if any, was not undertaken by USRC. The absence of plausible allegations on these essential elements of Plaintiff's claims warrants dismissal under Rule 12(b)(6).

## BACKGROUND

### A.    Plaintiff's Allegations of Unrelated Federal Land and Statutory Authority.

The Complaint primarily consists of assertions disconnected from Plaintiff's claims to ownership of Union Station, including allegations regarding adoption of the Articles of Confederation, the British Revolutionary War surrender at Yorktown, the history of the District of Columbia, and 18th and 19th century land acquisition and property rights in the United States. *See* Compl. at 9.[2]  As an example of the Complaint's digressive narrative about property rights, Plaintiff asserts that "in 1783 the King's title was divested by British defeat in the Revolutionary War." *Id.* at 9, 11. Then, "[a]fter the Louisiana Purchase of 1803, the Oregon Compromise of 1846, the Treaty of Guadalupe Hidalgo in 1848, and the Gadsden Purchase of 1853, the United

---

incomprehensible" and filled with "a litany grievances that are presented without any context, content, coherence or continuity, making it virtually impossible to ascertain the legal and factual significance of these allegations").

[2] Because Plaintiff's Complaint does not include numbered paragraphs, citations to the Complaint refer to the page numbers generated by CM/ECF.

States had power of both a sovereign and that of a proprietor over the land and water throughout its subject territories." *Id.* at 17. And, with respect to the Nation's capital, "[i]n 1800, President Adams ordered Federal official [sic] in the Executive branch to move from Philadelphia 'the Colonial Capital' to the new capital 'Washington, D.C." *Id.* at 27.

The Complaint likewise references numerous federal statutes and charters without an obvious connection to Plaintiff's claims. For instance, Plaintiff alleges that the "Union Station Terminal Company" possessed a right of way under "the deed of Trust provide [sic] by Act 3& Act, March 30, 1791." *Id.* at 8. Elsewhere, the Complaint cites the Articles of Confederation, *see id.* at 4, the "Organic Act of 1801," *id.* at 11, "Public law- Chs 439, 443-Oct. 29, 31, 1945, regarding Boundary [sic] line between the District of Columbia and the Common wealth [sic] of Virginia," *id.* at 17, and other enactments seemingly inapplicable to this case, *see id.* at 41 (citing "8 U.S. Code § 1324c" which discusses criminal penalties for document fraud in the immigration context).

Stripping away the Complaint's extensive excess allegations and parsing the remainder, the allegations directed to Plaintiff's property-based claims appear relatively straightforward (though mistaken). Taken step-by-step, Plaintiff alleges that he owns a company that indirectly owns Union Station in Washington, D.C., which the federal government acquired through an illegal taking and then charged its lessee USRC with restoration, historical preservation and operational oversight responsibilities. *See id.* at 35, 46 (stating that "Defendant's, Union Station Development Corporation have engaged in illegal taking involves [sic] the land of Union Station Terminal and building which register [sic] under Penn Central Transportation Company and owned by Plaintiff, Ibrahim Aly" and that "the building of Union station in the accounting book to their benefit disputed that those property [sic] owned by Plaintiff's, Reading Company").

**B.    Plaintiff's Alleged Ownership of the Reading Company, and Reading's Bankruptcy Reorganization.**

Plaintiff alleges that he owns Reading.  *See* Compl. at 9.  Reading, in turn, was a railroad company that—along with several other large Northeastern railroad companies—went bankrupt in the 1970s.  *See Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 109 & n.3 (1974); Compl. at 20 ("The bankruptcy of Northeastern Railroad was [sic] included [sic]: . . . Penn Central Transportation Company . . . Reading Company . . . and other related Railroad line [sic].").  As part of its reorganization, Reading's rail properties were conveyed through congressional enactment to the Consolidated Rail Corporation ("Conrail"), *see Consol. Rail Corp. v. Interstate Com. Comm'n*, 590 F.2d 937, 939 & n.8 (D.C. Cir. 1978)—an entity created by the federal government to take over certain bankrupt railroad companies' rail assets that still had the potential to be profitable.  *See* Compl. at 21.

After its reorganization, Reading continued (and continues) to operate as a publicly traded business under the name Reading International, but no longer operates as a railroad company.  *See Schweitzer v. Consol. Rail Corp.*, 65 B.R. 794, 796 (E.D. Pa. 1986) (stating that Reading "no longer operated a railroad as its rail holdings were transferred to the Consolidated Rail Corp. (Conrail) in 1976, through acts of Congress").  Rather, Reading International operates movie theatres.  *See* Reading International, *Corporate Overview*, https://investor.readingrdi.com/ (last accessed Oct. 27, 2025); Reading International, *Current Report* (Form 8K), Exhibit 99.1 (Aug. 14, 2025) https://tinyurl.com/43hvhh2m (providing updates on Reading International cinema and real estate projects).  Documents filed with the SEC—and publicly available on SEC's online EDGAR database—identify the current owners and operators of Reading, which do not include Plaintiff.  *See*, *e.g.*, Reading International, *Proxy Statement* (Schedule 14A) (Oct. 24, 2025) https://tinyurl.com/4h48yad5 (identifying Margaret Cotter as Chair of the Board of Directors);

Reading International, *Annual statement of changes in beneficial ownership of securities* (Form 5) (Feb. 14, 2023) https://tinyurl.com/yp7bx9jr (indicating that members of the Cotter family operate Reading); *see also Scioli Turco, Inc. v. Phila. & Reading R.R. Co.*, 2023 WL 7646535, at *1 (E.D. Pa. Nov. 14, 2023) (detailing Reading's history after bankruptcy, and indicating that James Cotter purchased the company).

> ### C.    Reading's Alleged Ownership of Union Station Through Penn Central and Other Entities.

Although muddled, the Complaint next alleges Plaintiff's ownership interest in Washington, D.C.'s Union Station through a series of other entities that Plaintiff alleges are ultimately owned by Reading—specifically, Plaintiff alleges that (1) Reading owns Penn Central Transportation Company ("Penn Central") and Amtrak, which (2) own the Washington Terminal Company ("WTC"), which (3) owns Union Station. These allegations are contradicted by other allegations in the Complaint and judicially noticeable facts.[3]

*First*, the Complaint alleges that Reading owns Penn Central—another railroad company that went bankrupt in the 1970s and that had its railroad assets conveyed to Conrail. *Id.* at 20–22, 30. In support of Reading's alleged ownership of Penn Central, the Complaint references "State of Pennsylvania Corporation Filed No. 269193" and "Northeastern Charter Railroad line, registered deed of record No. 39590785" without explaining what those cited materials establish or attaching the purported documents. *See id.* at 30, 45. The Complaint also cites to a decision of the Surface Transportation Board; but that decision does not indicate that Reading owns (or ever

---

[3] "Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies." *See, e.g., Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (collecting cases). Similarly, a court may take "judicial notice of facts on the public record," including opinions issued by other courts. *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

owned) Penn Central.  *See id.* at 45 (citing Surface Transportation Board Docket No. FD_34953_0 (Feb. 12, 2008)) https://tinyurl.com/8c8ekxuf).

Judicial decisions discussing the railroad bankruptcies of the 1970s indicate that Reading and Penn Central were separate entities.  *See, e.g., Blanchette*, 419 U.S. at 109 & n.3 (recognizing that Reading and Penn Central separately "entered reorganization proceedings").  Similarly, SEC filings demonstrate that after its reorganization through bankruptcy, Penn Central became "American Premier Underwriters, Inc. in order to better reflect its new identity as a property and casualty insurance specialist."  *See* American Premier Underwriters Inc., *Annual Report* (Form 10K) (March 29, 1994) https://tinyurl.com/2ted9tra.  SEC filings indicate that American Financial Group, Inc. owns 100% of the common stock of American Premier Underwriters.  *See* American Premier Underwriters Inc., *Current Report* (Form 8K) (Jan. 15, 1997) https://tinyurl.com/4mc4afuz; *see also* Compl. at 33 (acknowledging that "Terminal Reality Penn Company, District of Columbia had been Compromise by American Premier Underwriter, Inc.").

*Second*, the Complaint alleges that Reading owns "100[%] of common Share [sic] of the National passenger Corporation known as Amtrak."  Compl. at 31.  That allegation is incorrect because "the Secretary of Transportation holds all of Amtrak's preferred stock, as well as most of its common stock."  *Nat'l R.R. Passenger Corp. v. Sublease Int. Obtained Pursuant to an Assignment & Assumption of Leasehold Int. Made as of Jan. 25, 2007*, 2024 WL 2161814, at *2 (D.D.C. Apr. 17, 2024); *see also* Amtrak, *Consolidated Financial Statements* (FY 2023 & 2024) at 23 (Dec. 12, 2024) https://tinyurl.com/4p32wa3y (noting that federal government owns all of Amtrak's voting shares, and that Amtrak's common stock was partially owned by different railroads).

*Finally*, the Complaint alleges that Reading owns the WTC—what it calls the "Penn Center Transportation Company." Compl. at 32–34. Penn Central jointly owned WTC with the Baltimore and Ohio R.R. Co. until 1977. *See* Compl. at 32 (referencing WTC and alleging that Reading owned Penn Central); *see also* Moody's Transp. Manual, *Washington Terminal Co.* 112 (1976) (Ex. C) (noting that in 1976, WTC was "[j]ointly controlled through stock ownership by the Baltimore & Ohio RR Co. and the Philadelphia, Baltimore & Washington R.R. Co., a subsidiary of" Penn Central). Penn Central's shares in WTC were transferred to Amtrak in 1977. *See* Moody's Transp. Manual, *Washington Terminal Co.* 745 (1977) (Ex. A). Although WTC once "own[ed] Union Station in Washington, D.C. with terminals and approaches," WTC became a wholly owned subsidiary of Amtrak in 1982, *see* Moody's Transp. Manual, *Washington Terminal Co.* 931 (1982) (Ex. B), and WTC remains a subsidiary of Amtrak, *see* Amtrak, Consolidated Financial Statements, (FY 2023 & 2024) 23 (Dec. 12, 2024) https://tinyurl.com/4p32wa3y (explaining that WTC is a wholly owned subsidiary of Amtrak).[4]

### D. Current Ownership of Union Station.

"Pursuant to its authority under the [Union Station Redevelopment Act ("USRA")], the Secretary of Transportation purchased Union Station in 1988." *Nat'l R.R. Passenger Corp.*, 2024 WL 2161814, at *7; *see also id.* at 9 (explaining that Congress passed the USRA in 1981 and "authorized the Secretary of Transportation to purchase Union Station itself"). The Department of Transportation currently owns Union Station. *See* 40 U.S.C. § 6902.

---

[4] Courts have taken judicial notice of information in Moody's Manuals. *See*, *e.g.*, *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, n.3 (1944) (citing to Moody's Manual of Public Utilities (1943)); *Owens-Illinois Glass Co. v. Am. Coastal Lines, Inc.*, 222 F. Supp. 923, 927 (S.D.N.Y. 1963) (taking "judicial notice" of "Moody's Manual, Industrials, 1958 edition, page 2789").

For its part, the Complaint includes allegations relating to the nature of property recordation and fraud, *see* Compl. at 18–19, 41, possibly to suggest that the public records of railroad and Union Station ownership are incorrect.  The Complaint does not specifically allege such inaccuracy, or explain how any particular record may be inaccurate, or demonstrate that Reading or Penn Central currently owns Union Station.   To the contrary, the Complaint alleges that Reading and Penn Central went bankrupt and that their railroad assets were conveyed to Conrail and Amtrak.  *See* Compl. at 21 ("Conrail assumed control of what had been the Reading Company's system of rail lines, The Reading mainline and branch lines continue to thrive as freight operations.  While, the National Passenger [sic] Corporation takin [sic] the Passnger [sic] Side which was under Reading Company- Subsidary, [sic] Penn Central Transportation Company- Branches and Pennsylvania Railroad Company-Branches.").   The Complaint nevertheless concludes that Penn Central or Reading (which allegedly owns Penn Central) owns Union Station, and that the federal government has taken the Union Station property without just compensation in violation of the U.S. Constitution and Section 1983.  *See id.* at 35–37.

## LEGAL STANDARD

### A.    Rule 12(b)(1) Standard.

In every case, "a showing of standing 'is an essential and unchanging' predicate to any exercise of [federal] jurisdiction."  *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (internal citation omitted).  Although USRC removed this action to this Court, the District of Columbia local courts have "adopted the identical three-part test for standing followed in the federal courts" and "follow[] the principles of standing . . . to promote sound judicial economy" and the adversarial system even though the District of Columbia courts are established under Article I of the Constitution, and are therefore not bound by Article III.  *Grayson v. AT&T Corp.*, 15 A.3d 219,

233 (D.C. 2011). The principles of Article III thus generally determine a plaintiff's standing to bring a claim in both federal and local District of Columbia courts.

Under Rule 12(b)(1), the plaintiff bears the burden of establishing subject-matter jurisdiction to assert his claims. *See U.S. Ecology, Inc. v. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998)); *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). "[A] court ruling on a Rule 12(b)(1) motion may consider evidence beyond the four corners of the complaint and material subject to judicial notice." *Robinson v. Pilgram*, 2021 WL 5987016, at *4 (D.D.C. Dec. 17, 2021), *aff'd*, 2022 WL 3009621 (D.C. Cir. July 28, 2022) (internal citation omitted); *see also, e.g.*, *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

## B.    Rule 12(b)(6) Standard.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In assessing a complaint under Rule 12(b)(6), courts grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). A reviewing court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191, 197 (D.D.C. 2011) (cleaned up).

Where a complaint is filed by a *pro se* plaintiff, courts "consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), because *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "The permissive standard is not, however,

a license for a plaintiff filing *pro se* to ignore the Federal Rules of Civil Procedure." *Gallo v. D.C.*, 2025 WL 1446283, at *2 (D.C. Cir. May 20, 2025).  Thus, a *pro se* complaint that contains "mere conclusory statements" is not sufficient to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.  Nor must a court "accept as true the complaint's factual allegations insofar as they contradict . . . matters subject to judicial notice." *Brown v. Pa. Higher Educ. Assistance Agency*, 2021 WL 2525024, at *1 (D.C. Cir. May 17, 2021) (quoting *Owens v. BNP Paribas*, S.A., 897 F.3d 266, 272 (D.C. Cir. 2018)).

"[W]here the well-pleaded facts do not permit a court, drawing on its judicial experience and common sense, to infer more than the 'mere possibility of misconduct,' the complaint has not shown that the pleader is entitled to relief." *Daniels v. D.C.*, 894 F. Supp. 2d 61, 65 (D.D.C. 2012).  And "a [c]ourt is obligated to dismiss a complaint as frivolous 'when the facts alleged rise to the level of the irrational or the wholly incredible,' or 'postulat[e] events and circumstances of a wholly fanciful kind.'" *Hicks v. Maryland*, 2025 WL 2206941, at *1 (D.D.C. Aug. 1, 2025) (first quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992), and then *Crisafi v. Holland*, 655 F.2d 1305, 1307-08 (D.C. Cir. 1981)).[5]

## ARGUMENT

### I.    Plaintiff Lacks Standing to Assert His Claims.

"The irreducible constitutional minimum of standing contains three elements: injury in fact, causation, and redressability." *Arpaio*, 797 F.3d at 19 (quotation omitted).  Plaintiff's claims

---

[5] If a complaint is sufficiently frivolous, a court "cannot exercise subject matter jurisdiction over" it.  *Hicks*, 2025 WL 2206941, at *1 (quoting *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) ("Over the years, this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'")).

cannot proceed because the Complaint fails to establish either an injury in fact suffered by Plaintiff or that USRC caused any alleged injury to Plaintiff. Dismissal is therefore required under Rule 12(b)(1).

### A.    Plaintiff Has Not Plausibly Alleged Injury in Fact.

A plaintiff must show that he "has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 180–81 (2000) (quoting *Lujan,* 504 U.S. at 560–61). "Standing is party specific: a 'plaintiff generally must assert *his own* legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Breathe DC v. Swedish Match N. Am. LLC*, 2025 WL 2759042, at *4 (D.D.C. Sep. 29, 2025) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)) (emphasis added). In other words, to establish injury in fact, Plaintiff must plausibly allege facts showing that he himself was injured by alleged conduct of USRC. Plaintiff cannot establish standing to sue USRC because he has identified no injury in fact.

At the outset, Plaintiff has not asserted any injury to himself. The allegations throughout the Complaint make clear that any harms alleged are not to Plaintiff directly, but to Reading. The Complaint asserts that Reading owns the rights to Union Station, *see* Compl. at 20, 31–32, and was deprived of those rights by an illegal government taking, *see id*. at 35–36. *See also supra* pp. 6–8. Assuming arguendo that these allegations are true, Reading—not Plaintiff—is the party injured by the alleged taking of Union Station. Plaintiff does not assert any other harm, let alone any direct harm to himself. Accordingly, the Complaint fails the basic requirement of alleging an injury in fact to Plaintiff himself because any claim Plaintiff alleges is completely derivative of Reading's alleged ownership rights in Union Station.

Even if the Complaint plausibly alleged an injury to Reading (which it does not), Plaintiff nonetheless lacks standing to assert rights that belong to Reading—a third party not before the

12

Court.  *See Lepelletier v. FDIC*, 164 F.3d 37, 42 (D.C. Cir. 1999) (explaining that third party standing requires plaintiff to "show [(A)] that he has standing under Article III, and [(B)] that he satisfies third party . . . standing requirements").  To satisfy third-party standing requirements, a plaintiff "must have a close relation to the third party . . . and there must exist some hindrance to the third party's ability to protect his or her own interests."  *Gelb v. U.S. Dep't of Def.*, 2025 WL 49882, at *9 (D.D.C. Jan. 8, 2025) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).  "This principle governs cases brought under District of Columbia and federal law alike."  *Bronner v. Duggan*, 364 F. Supp. 3d 9, 19 (D.D.C. 2019), *aff'd sub nom. Bronner on Behalf of Am. Stud. Ass'n v. Duggan*, 962 F.3d 596 (D.C. Cir. 2020).

"[T]he burden is on the plaintiff to establish that he has third party standing, not on the defendant to rebut third party standing."  *Au-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 23 (D.D.C. 2010) (cleaned up).  Plaintiff satisfies neither requirement for third-party standing.

*First*, Plaintiff does not have a sufficiently close relationship with Reading.  To establish that relationship, the "identity of interests" between Plaintiff and Reading must be close enough to make Plaintiff an "effective advocate" for Reading's interests.  *Ams. for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, 2023 WL 1438376, at *9–10 (D.D.C. Feb. 1, 2023) (explaining that not just "any identity of interests" will suffice and that "sharing the same goals and desires as a third party does not create the requisite relationship").  While Plaintiff claims that he owns Reading, *see* Compl. at 9, 36, 45–46, both the allegations in the Complaint and judicially noticeable facts contradict that conclusory assertion.

To begin with, the Complaint acknowledges that Reading entered bankruptcy in 1973 and its "railroad properties were conveyed to ConRail 'free and clear of all liens and encumbrances.'" Compl. at 21.  Conrail was created by the federal government to take over the railroad services of

multiple bankrupt carriers, including Reading and Penn Central. *See Consol. Rail Corp.,* 590 F.2d at 939 & n.8 ("Conrail as of April 1, 1976 took over and continued the rail operations of the bankrupt northeastern railroads; and to this end there was conveyed to it on that date substantially all of the rail properties of these railroads" including "Penn Central Transportation Co., [and] Reading Co."). The Complaint further concedes that Amtrak took over Reading's passenger service capacity, *see* Compl. at 15 ("National Passenger [sic] Corporation taking [sic] the Passenger [sic] Side which was under Reading"), while Conrail took over Reading's freight lines, *id.* at 15. Plaintiff then acknowledges that Conrail was dissolved in 1987, and that Conrail's properties were transferred to the Department of Transportation. *See* Compl. at 22. Thus, to the extent that Plaintiff asserts he owns Reading the railroad company, the Complaint demonstrates that company no longer exists.

Public records of which the Court may take judicial notice further demonstrate that Plaintiff does not own—or have any close relationship with—the Reading company as it exists after its bankruptcy reorganization. After Reading transferred ownership of its railroad assets to Conrail, it was left with residual non-rail assets and reorganized through bankruptcy proceedings with those assets. *See Matter of Reading Co.*, 24 B.R. 858, 860 (E.D. Pa. 1980); *see also Schweitzer*, 65 B.R. at 796 (stating that Reading "no longer operated a railroad as its rail holdings were transferred to" Conrail "in 1976, through acts of Congress"). In the 1980's, "businessman James Cotter purchased the Reading Company's assets out of bankruptcy and formed Reading International, Inc." *See Scioli Turco*, 2023 WL 7646535, at *1 (E.D. Pa. Nov. 14, 2023).

Documents filed with the SEC—and publicly available on SEC's online EDGAR database—demonstrate that members of the Cotter family continue to own and operate Reading International. *See SEC v. RPM Int'l, Inc.*, 282 F. Supp. 3d 1, n.4 (D.D.C. 2017) ("[T]he Court may

14

take judicial notice of public records, including SEC filings."). For example, SEC filings demonstrate that as of July 12, 2022, the James J. Cotter Living Trust owned 41.4% of the Class B voting common stock of Reading International. *See* Reading International, SCHEDULE 13D (July 12, 2022) https://tinyurl.com/9tzyajfz. Similarly, filings from 2023, demonstrate that Margaret Cotter was a "Director" and "Chairperson" of Reading International and directly owned more than 10% of Reading International, and that Margaret Cotter and Ellen Cotter collectively owned "614,332.8 shares of Voting Stock" in Reading. *See*, *e.g.*, Reading International, *Annual statement of changes in beneficial ownership of securities* (Form 5) (Feb. 14, 2023) https://tinyurl.com/yp7bx9jr. As of June 13, 2025, Margaret Cotter owned 853,718 shares of Reading International and remained chairperson, *see* Reading International, *Statement of Changes in Beneficial Ownership* (Form 4) (June 13, 2025) https://tinyurl.com/4dss737r, and Ellen Cotter was "Director, President, and CEO" with 1,008,957 shares of Reading International stock, *see* Reading International, *Statement of Changes in Beneficial Ownership* (Form 4) (June 13, 2025) https://tinyurl.com/5a7ycwd3.

By contrast, a search of the SEC's EDGAR database returns no results for Plaintiff "Ibrahim Aly"—in relation to Reading or any other company. Because Reading International is publicly traded, any shareholder who acquires more than 5% of outstanding shares must file with the SEC. 15 U.S.C. § 78m(d). Plaintiff has not done so. Instead, the Complaint includes only the bare allegation that Plaintiff owns Reading. *See* Compl. at 9, 46, 50. Because Plaintiff provides no facts allowing the Court to infer that he has any relationship with Reading—let alone that he owns Reading—and because public documents demonstrate the contrary, Plaintiff lacks the close relationship necessary to sue USRC on Reading's behalf.

*Second*, Plaintiff has not shown any "genuine obstacle" that prohibits Reading from protecting its own interests (if any) in Union Station. *See Am. Immigr. Laws. Ass'n v. Reno*, 199 F.3d 1352, 1362 (D.C. Cir. 2000). Reading International is a sophisticated corporate party that is aware of its property holdings and knows how to litigate to protect its own interests. *See generally Scioli Turco*, 2023 WL 7646535, at *1 (Reading International defending against suit filed by plaintiff who sought to be appointed as a conservator of one of Reading's historic properties). Because there is no alleged obstacle preventing Reading International from asserting its own interests, Plaintiff may not sue on behalf of Reading.[6]

Moreover, even assuming that Plaintiff holds some share of ownership in Reading (which he has not shown), shareholders are "generally prohibit[ed] . . . from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Bronner*, 962 F.3d at 607 (quoting *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990)). Thus, even if Plaintiff was a shareholder in Reading, that position does not confer standing to assert Reading's claims. *See Cheeks v. Fort Myer Constr. Co.*, 722 F. Supp. 2d 93, 108 (D.D.C. 2010); *see also Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 n.14 (D.C. Cir. 1984) ("No shareholder—not even a sole shareholder—has standing in the usual case to bring suit in his individual capacity on a claim that belongs to the corporation."). Plaintiff would only have "standing to assert the corporation's claims if he has some direct personal interest at stake that is distinct from the corporation's interests." *Cheeks*, 722 F. Supp. 2d at 109. But Plaintiff fails to identify any personal injury independent of Reading's alleged property injury. To the contrary, Plaintiff's alleged

---

[6] Indeed, only individuals, not corporations or other legal entities, may proceed *pro se*, *see Lennon v. McClory*, 3 F.Supp.2d 1461, 1462 n. 1 (D.D.C.1998); thus, Plaintiff's filing *pro se* further precludes his assertion of Reading's alleged interests.

16

injuries are entirely "based on injury to [the] corporation" and are "derivative in nature." *Labovitz v. Wash. Times Corp.*, 172 F.3d 897, 901 (D.C. Cir. 1999); *see also Cheeks*, 722 F. Supp. 2d at 109 ("Generally, economic damages to the shareholder that result from losses to the corporation do not qualify as direct or independent harm giving rise to shareholder standing.").   The shareholder standing rule thus further bars Plaintiff's derivative claims.

> **B.    The Complaint Does Not Plausibly Allege that the Alleged Injury Is Traceable to USRC's Conduct.**

Plaintiff also lacks standing because he has not plausibly alleged—and could not demonstrate—that USRC caused his alleged injury.   When establishing causation for standing purposes, a plaintiff "generally cannot rely on" the actions of "independent actors not before the courts." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024).   The Complaint makes clear that the Department of Transportation took possession of Union Station, and that USRC merely exercises oversight over Union Station on behalf of the Department as a lessee for purposes of promoting the restoration and preservation of Union Station.   *See* Compl. at 33.   *See also Nat'l RR Passenger Corp.*, 2024 WL 2161814, at *4 ("[T]he Secretary [of Transportation] entered into a 99-year lease agreement with [USRC] . . . to facilitate the rehabilitation and redevelopment of the Union Station complex." (cleaned up)).   Because the Complaint alleges that the actions of a third-party not before the court (*i.e.*, the Department of Transportation) is the cause of any alleged injury, Plaintiff cannot establish that his claim is traceable to USRC's conduct and he therefore lacks standing to bring the asserted claims.

## II.    The Complaint Fails to State a Claim for Which Relief Can Be Granted.

Even if Plaintiff could plausibly allege standing (and he has not), his claims nevertheless fail on the merits.   Plaintiff asserts that he owns Reading, that Reading owns Penn Central, and that either Reading or Penn Central owns Union Station.   *See supra* pp. 6–8.   Plaintiff then asserts

17

that the Department of Transportation effected an illegal taking of Union Station in either the 1970s or 1980s, which entitles Plaintiff to relief including ejectment of USRC from Union Station. These allegations of the Complaint fail to state a claim on multiple independent grounds.

### A.    Plaintiff's Suit Is Barred by the Applicable Statute of Limitations.

As a threshold matter, Plaintiff's suit was filed on September 18, 2025, and is barred by the applicable statute of limitations because the allegedly injurious conduct—the taking of Union Station—occurred over 30 years ago.

Plaintiff alleges a taking of property in violation of the Fifth Amendment and Section 1983, and seeks ejectment under D.C. law. Under D.C. law, "actions . . . for the recovery of lands" "may not be brought after" "15 years." D.C. Code § 12–301(a)(1). Under Federal law, an action asserting a taking is "barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. And the limitations period for a 42 U.S.C. § 1983 claim "is that which the State provides for personal-injury torts"—and D.C. courts apply "the three-year residual statute of limitations to a section 1983 claim." *Jefferson-11th St., LLC v. D.C.*, 2020 WL 3035038, at *3 (D.D.C. June 5, 2020) (cleaned up). In other words, under the longest statute of limitations applicable to Plaintiff's claims, a claim is barred after 15 years.

Although the Complaint does not explicitly allege when the alleged taking occurred, the U.S. Supreme Court explained in *Knick v. Township of Scott, Pennsylvania*, that a takings claim accrues "when [a government] takes property without compensation . . . because the violation is complete at the time of the taking." 588 U.S. 180, 202 (2019). There is no reading of the Complaint that would place Plaintiff's claims within any applicable statute of limitations. Assuming arguendo that Plaintiff's allegations are true, Reading's claim for a taking of its purported property accrued in 1976 when Reading's "rail holdings were transferred to" Conrail and Amtrak. *Schweitzer*, 65 B.R. at 796. The resulting 48-year gap before Plaintiff filed suit is

18

well beyond either the D.C. or federal statute of limitations periods. Moreover, even if Plaintiff's asserted claim accrued when USRC began its oversight of Union Station, the Complaint concedes that event took place in 1983—41 years ago. *See* Compl. at 33 ("DOT creates the Union Station Redevelopment Corporation's (USRC) to oversee restoration and redevelopment"). And even if the claim did not accrue until the Department of Transportation purchased Union Station in 1988, *see Nat'l R.R. Passenger Corp.*, 2024 WL 2161814, at *7, that is still 38 years before Plaintiff filed his Complaint.

In other words, regardless of whether the federal or D.C. limitations periods apply, Plaintiff's claims are decades too late and must be dismissed.

### B.    The Complaint Violates Federal Rules of Civil Procedure 8 and 10.

Plaintiff's Complaint should also be dismissed for failure to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 8 requires a complaint to contain "(1) a short and plain statement of the grounds for the court's jurisdiction [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). *See also* Fed. R. Civ. P. 8(d)(1) (providing that a complaint must be "simple, concise, and direct"). In practice, "[a] pleading that 'contains an untidy assortment of claims that are neither plainly nor concisely stated' does not fulfill the requirements of Rule 8." *Mills v. Am. Univ.*, 2022 WL 17719576, at *4 (D.D.C. Dec. 15, 2022) (quoting *Jiggetts v. D.C.*, 319 F.R.D. 408, 413 (D.D.C. 2017) (KBJ), *aff'd sub nom. Cooper v. D.C.*, No. 17-7021, 2017 WL 5664737 (D.C. Cir. Nov. 1, 2017)).

"Pro se litigants are subject to the Rule 8 requirements." *Id*. Here, the Complaint displays the type of "confused and rambling narrative of charges and conclusions" that "does not comply with the requirements of Rule 8." *Cheeks v. Fort Myer Constr. Corp.*, 71 F. Supp. 3d 163, 169 (D.D.C. 2014) (cleaned up). Moreover, the Complaint's prolixity and abundance of irrelevant and

19

confused historical and legal citations, *see supra* pp. 3–4; *see also*, *e.g.*, Compl. at 10 ("Sovereign meant that the Jurisprudence for enforcing United States law, as stated in Artical [sic] of Constitution, its Amendment and the Bill of Right. the elected Official Supreme authority to intact [sic] and enforce the law over their owned Land. the full right and power for the governing body to govern itself without any interference from outside sources or bodies [floreign [sic].]"), results in a pleading that is "excessively long, rambling, disjointed, incoherent, or full of irrelevant and confusing material" in violation of the Rule 8 standard, *T.M. v. D.C.*, 961 F. Supp. 2d 169, 174 (D.D.C. 2013).   Like other complaints that violate Rule 8, the Complaint "cites, without explanation, to random laws and other legal authority, and references." *Khoza v. D.C.*, 2025 WL 2970352, at *1 (D.D.C. Oct. 21, 2025); *see also Chancellor v. Musk, et al.*, 2025 WL 2959675, at *1 (D.D.C. Oct. 20, 2025); *see, e.g.*, Compl. at 11, 17.   Taken together, the Complaint's rambling narrative—and the effort required to sift Plaintiff's claims out of the disjointed allegations—undermines the purpose of Rule 8 "to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Mills*, 2022 WL 17719576, at *5 (citation omitted).

Relatedly, Federal Rule of Civil Procedure 10 requires a plaintiff to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  "[E]ven pro se litigants must comply with the Federal Rules of Civil Procedure . . . particularly where, as here, the plaintiff's failure to comply disadvantages the opposing party." *Acon-Chen v. Buttigieg*, 2024 WL 4416943, at *2 (D.D.C. Oct. 5, 2024).  The Complaint lacks any numbered paragraphs.  *See generally* Compl.

Because the Complaint fails to comply with Rules 8 and 10 the Court should dismiss this action.  *See Acon-Chen*, 2024 WL 4416943, at *2; *Lee v. Natl. Elec. Contractor Ass'n*, 322 F.

Supp. 3d 43, 45 (D.D.C. 2018) (dismissing complaint when "ambiguous and rambling allegations comprising the complaint fail[ed] to provide adequate notice of a claim"). Indeed, numerous district courts—including in this district—have dismissed past complaints filed by Plaintiff for, *inter alia*, failure to comply with Rule 8. *See*, *e.g.*, *Aly*, 2021 U.S. Dist. LEXIS 6049, at *2 (dismissing complaint for failure to comply with Rule 8); *Aly*, 2016 U.S. Dist. LEXIS 21259, at *1 (describing Plaintiff's complaint as "cryptic and incomprehensible" and filled with "a litany grievances that are presented without any context, content, coherence or continuity, making it virtually impossible to ascertain the legal and factual significance of these allegations").

### C.    The Complaint Fails to Allege Facts Essential to Plaintiff's Asserted Claims for Relief.

The Complaint also alleges neither a Fifth Amendment takings claim under federal law nor a claim for ejectment under District of Columbia law. In both instances, the Complaint fails to plead facts essential to the claim for relief.

### 1.    Plaintiff's Takings Claim Is Fatally Deficient.

The Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. "A property owner has an actionable Fifth Amendment takings claim when the government takes *his* property without paying for it." *Knick*, 588 U.S. at 185 (emphasis added). However, "the party charged with the [constitutional] deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Plaintiff fails to state a takings claim under the Fifth Amendment for multiple independent reasons.

*First*, USRC is a nonprofit organization, not a state actor. *See* Compl. at 33 ("USRC is a not-for-profit incorporated in Washing[ton], DC, run by its president and a small supporting staff."). The Fifth Amendment applies only to government action. *Cf., Lugar*, 457 U.S. at 936

(explaining requirement of government action).   Because USRC is a private, non-profit entity that cannot be described as a state actor, Plaintiff cannot state a Fifth Amendment takings claim against USRC.  *See*, *e.g., Haynes v. Navy Fed. Credit Union*, 825 F. Supp. 2d 285, 297 (D.D.C. 2011).

*Second*, as explained above, Plaintiff does not allege that *he* owns the property—Union Station—that was purportedly taken; rather, Plaintiff alleges that Reading (or Penn Central) owns Union Station.  *See supra* 6–8; Compl. at 32, 46.  Even taking Plaintiff's allegations as true, he is not the "property owner" of Union Station in his personal capacity and therefore does not have an "actionable Fifth Amendment takings" claim.  *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021).  Moreover, to the extent the Complaint alleges that Reading and Penn Central owned only an easement to their railroad properties, *see* Compl. at 10, 33, 44, the properties ultimately belonged to the federal government and thus Reading and Penn Central do not own Union Station. In other words, the Complaint either wholly fails to plead the requisite property ownership to support a takings claim, or contradicts any inference of such an ownership interest.

*Third*, even if Plaintiff could assert a right to Reading or Penn Central's property, the Complaint concedes that Reading's and Penn Central's railway assets were "conveyed" to Conrail and the federal government.  *See id.* at 14–15.  The word convey connotes the "transfer or deliver[y] [of] (something, such as a right or property) to another, esp. by deed or other writing." *Convey*, Black's Law Dictionary (12th ed. 2024).  The Complaint does not allege that any conveyance was involuntary, but rather alleges that the conveyance was undertaken to obtain benefits from the government for failing rail businesses.  *See* Compl. at 20; *see also supra* p. 5. Thus, according to the Complaint, Reading and Penn Central voluntarily relinquished the rights to their railroad properties to obtain government assistance.  Hence, neither could claim that the government took their property in violation of the Fifth Amendment.

*Fourth*, again assuming that Plaintiff can assert the alleged property rights of Reading and Penn Central (and he cannot), Plaintiff does not allege that the government failed to pay just compensation for Reading's or Penn Central's assets.   A takings claim exists only when the government has taken property without paying just compensation for it.  *Knick*, 588 U.S. at 185. The Complaint notes that Reading and Penn Central assets were "conveyed" to and "acquire[d]" by the government rather than that they were taken.  *See* Compl. at 20–21.  Indeed, the U.S. government paid Reading and Penn Central for their railroad assets.  *See Blanchette*, 419 U.S. at 111 (explaining compensation paid to railroads by U.S. Government); *Nat'l R.R. Passenger Corp.*, 2024 WL 2161814, at *7 (stating that "[p]ursuant to its authority under the USRA, the Secretary of Transportation purchased Union Station in 1988").   Because the government paid for the property, there was no illegal taking.

### 2.    The Complaint Fails to State a Claim for Ejectment.

Plaintiff's claim for ejectment relief under District of Columbia law fares no better.  "A plaintiff, who brings an ejectment cause of action pursuant to D.C. Code § 16-1101, may prevail if he can show that he is entitled, as against the defendant, to the immediate possession of the premises claimed, and that the defendant is . . . exercising acts of ownership over the premises, adversely to the plaintiff.'"  *U.S. Bank Nat'l Ass'n v. Poblete*, 2016 WL 1089217, at *12 (D.D.C. Mar. 18, 2016) (quoting D.C. Code § 16-1104).  Plaintiff's Complaint fails on both aspects of this claim.

*First*, nowhere in the Complaint does Plaintiff allege that he personally owns Union Station, *see supra* pp. 6–8—the "premises" for which he seeks ejectment.  Rather, Plaintiff conclusorily asserts that he owns Reading, which he says owns Union Station.  *See supra* pp. 6–8. Plaintiff thus has no personal claim whatsoever and cannot show "that he is entitled, as against [USRC], to the immediate possession over the premises."  *U.S. Bank Nat'l Ass'n*, 2016 WL

1089217, at *12.  To the contrary, Plaintiff concedes that the federal government—rather than Plaintiff—is entitled to possession over Union Station.  Throughout the Complaint, Plaintiff emphasizes that the federal government has plenary power over land acquisition, *see* Compl. at 9, 11, and he states that the Department of Transportation acquired Union Station, *id.* at 33; *see also* 40 U.S.C. § 6902 (granting Secretary of Transportation title to Union Station).

Plaintiff's alleged ownership of Reading does not bridge this gap.  Even assuming that Reading has an ownership claim to Union Station (which it does not), under D.C. law, even "a majority or sole shareholder is prohibited from suing individually to redress wrongs associated with real property owned by a corporate entity because, under corporate law, title to the corporate property is vested in the corporation and not in the owner of its stock."  *Martin v. Santorini Cap., LLC*, 236 A.3d 386, 393 (D.C. 2020) (quotation omitted).  Instead, "the corporate entity" must "sue on its own behalf."  *Id.*  Reading has brought no such suit; only Plaintiff alone.

*Second*, Plaintiff has not pleaded facts establishing that USRC is "exercising acts of ownership over the premises."  *U.S. Bank Nat'l Ass'n*, 2016 WL 1089217, at *12.  Although USRC exercises oversight with respect to Union Station under "a lease agreement" with the Department of Transportation, it is the Department that "owns Union Station."  *See Nat'l R.R. Passenger Corp. (Amtrak) v. Sublease Int. Obtained Pursuant to Assignment & Assumption of Leasehold Int. Made as of Jan. 25, 2007*, 2025 WL 708514, at *2 n.2 (D.D.C. Mar. 5, 2025); *see also* 40 U.S.C. § 6902 ("The Secretary of Transportation has the right, title, and interest in and to the Union Station complex.").  Because USRC is only a lessee and not exercising acts of ownership over the premises, Plaintiff cannot state an ejectment claim against USRC.

*Third*, federal law explicitly authorizes the Secretary of Transportation to lease Union Station.  *See* 40 U.S.C. § 6902; 40 U.S.C. § 6903 ("The Secretary of Transportation may make

24

agreements and contracts, . . . with a person, a federal, regional, or local agency . . . that the Secretary considers necessary or desirable to carry out the purposes of this subchapter.").  And Congress specifically contemplated that the Secretary of Transportation would lease the property to "provide for the rehabilitation and redevelopment of the Union Station complex."  *Nat'l R.R. Passenger Corp.*, 2024 WL 2161814, at *3 (quoting the Union Station Redevelopment Act).  The Department of Transportation leased Union Station to USRC for precisely that purpose.  *See supra* p. 17.  When a state law "stands as an obstacle to the accomplishment and execution" of a federal statute, courts conclude that the state law is preempted through conflict preemption.  *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000).  Hence, if D.C.'s law on ejectment were applicable here, it would be preempted as an obstacle to the execution of federal statutes authorizing the Secretary of Transportation to lease Union Station to USRC—the entity tasked with managing the renovation and "overseeing the Station[]."  *See* Compl. at 33.

*    *    *

For all of these reasons, individually and collectively, the Complaint fails plausibly to allege facts sufficient to show that he is entitled to relief on either of his claims.  Indeed, in many instances, the Complaint's allegations contradict Plaintiff's claims for relief.

### D.    Plaintiff Sues the Wrong Defendant.

The Court should also dismiss the Complaint because Plaintiff has sued the incorrect defendant.  *See Nwosu v. Hewlett Packard Enter. Co.*, 2025 WL 1744582, at *1 (D.D.C. Feb. 7, 2025) (dismissing case where plaintiff "sued the wrong [d]efendant").  Although the Complaint alleges that the federal government effected an illegal taking of Union Station from Reading, Plaintiff has sued USRC—a non-profit entity that does not own Union Station and which did not have a role in the acquisition of Union Station.  *See supra* pp. 5–8, 17.  As the Complaint acknowledges, USRC's role is merely to oversee the restoration and development of Union Station

25

as lessee to the Department of Transportation. *See* Compl. at 33.  The Complaint should be dismissed because Plaintiff has sued the wrong defendant.[7]

## CONCLUSION

For the foregoing reasons, USRC respectfully requests that the Court dismiss the Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim for relief under Rule 12(b)(6).  If the Court reaches the Complaint's sufficiency under Rule 12(b)(6), USRC respectfully requests that the Court dismiss with prejudice because any possible amendment of the Complaint would not survive a motion to dismiss.  *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996); *Carty v. Author Solutions, Inc.*, 789 F. Supp. 2d 131, 135–36 (D.D.C. 2011).  Plaintiff could not amend his Complaint in any non-futile way because, among other things, the asserted claims are time-barred, and Plaintiff is not the proper plaintiff to assert the alleged ownership rights nor is USRC the proper defendant to the alleged taking.


DATED:  November 6, 2025                    Respectfully submitted,

                                            /s/ Bradley K. Ervin
                                            Bradley K. Ervin
                                                D.C. Bar Number 982559
                                            Emile J. Katz
                                                D.C. Bar Number 90006190
                                            COVINGTON & BURLING LLP
                                            One CityCenter
                                            850 Tenth Street NW

---

[7] Even if Plaintiff had filed suit against the federal government, takings claims against the federal government of over $10,000 must be brought in the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491.  *See Knick*, 588 U.S. at 189–90 ("The Tucker Act . . . provides the standard procedure for bringing [takings] claims" . . . "[i]f there is a taking, the claim is 'founded upon the Constitution' and within the jurisdiction of the Court of Claims to hear and determine." (cleaned up)).  Because the Complaint involves more than $10,000, any takings claim by the Plaintiff against the government must be filed in the Claims Court.

Washington, DC 20001-4956
Tel. (202) 662-6000
Email: bervin@cov.com
Email: ekatz@cov.com

*Counsel for Union Station Redevelopment
Corporation*